### SIMON v. THE NORTH WESTERN OHIO NATURAL GAS CO.

CONSTRUCTION OF LEASE.

A gas and oil lease in which the lessor grants to the lessee the right to enter upon certain lands, for the purpose and with the exclusive right to drill and develop oil and gas and other valuable substances, said rights to continue and be in force for five years from date of lease; *held*, that the lessee should have proceeded to drill such wells upon the lands in question within the time fixed in the agreement, and that the lessee had not the right to commence to drill such wells after the expiration of the five years, and that an attempt to do so would be restrained by injunction.

HAYNES. J.

This is an action brought to declare a forfeiture of a certain lease for oil or gas upon certain premises owned by the plaintiff, Levi Simon, which lease has come into the possession of the defendant, a corporation. An outline of the facts in the case are substantially these: On the 25th of June, 1886, Levi Simon made a lease to The Palmer Oil and Gas company and granted to it the right to enter upon a tract of 60 acres off the north end of the northeast quarter of section twenty-nine (29), for the purpose and with the exclusive right in and upon said premises to drill and develop oil and gas and other valuable substances. Then there is this stipulation: "It is further hereby agreed by and between said parties, their successors and assigns, that this contract and the rights and privileges herein granted and conferred shall continue and be in force for five years from the date hereof, or so long as oil and gas or other valuable substances be found and developed upon said premises in paying quantities."

And it is further agreed that "In case said party of the second part, their successors and assigns, shall not commence operations upon said premises within sixty days from the date hereof, then this contract may be terminated upon sixty days' notice by either party." The Palmer Oil and Gas company went into possession of the premises and proceeded to and did sink a well which turned out to be a gas well. That contract was entirely substituted by another contract or lease that was made on the 13th day of September, 1886, being about two and a half months after the first lease or contract; which lease was made directly from Levi Simon to The Northwestern Ohio Natural Gas company, the defend-

ant herein, and it granted to it, the right to mine for and excavate petroleum, carbon oil, gas or water on a tract of land situate in section twenty-nine (29), town three (3), range eleven (11), Wood county, Ohio, containing one hundred and ten (110) acres more or less, and also one half acre (1-2) in the southeast corner of the northeast quarter (1-4) of the southeast quarter (1-4) of section thirty. Now it is agreed, although the description is not a very clear description, that the land covered by this lease is thirty (30) acres of the sixty (60) acres contained in the first lease on the east half (1-2) of the north west quarter (1-4) of the west half (1-2) of the northwest one quarter (1-4), which would include the other thirty acres in the first lease and also the half acre in the southeast corner of the north east quarter (1-4) of the southeast quarter (1-4) of section thirty (30).

This lease reads: "To have and to hold said premises, for the said purposes only, or either of them, unto the said party of the second part, its successors or assigns during and until the full term of five (5) years next ensuing the day and year written above, or as long as oil or gas shall be found in paying quantities in said described land, or the said second party or its assigns continue to operate a pipe line over or through the same."

The evidence shows that in pursuance of that lease, a well was sunk upon the half acre which was never operated. The well that was sunk upon the thirty acres in the north end of the northeast quarter of section twenty-nine proved to be a good gas well, and is to-day, I believe. No other wells were sunk, and especially upon the eighty acres being the west half of the northeast quarter of section twenty-nine (29).

On the twentieth day of February, 1891, being some six months or more before the expiration of this lease, another arrangement was made between Levi Simon and The Northwestern Ohio Natural Gas company whereby the company paid to Simon $4,500 in money and they received a deed from him of the east half (1-2) of the northwest quarter (1-4) of section twenty nine (29) and conveyed the thirty acres on which the well was situated and also the fifty acres on the south of it which was simply put in to make a good title and has no bearing upon the case at bar. He also conveyed all the gas and oil and other mineral or vegetable substances in or under the following premises: the east fifty acres of the north half of the southeast quarter of section thirty, except one half acre out of the southeast corner thereof. Then there are provisions for the erection of derricks and the operation of the land for oil and gas, and then the deed provides: "It is understood and agreed between the parties hereto that this conveyance shall not in any manner annul or affect the rights of the grantee herein acquired by the terms of the lease made by the grantor herein for the west half (1-2) of the north west half (1-2) of said section twenty-nine (29) under date of September 13, 1886, and duly recorded in volume D, page 157, of the records of leases of said county."

It will be observed that that reserves to the grantees the eighty acres I have spoken of, being the east half of the northeast quarter. Then it continues: "And it is understood that the payment of $1,502, heretofore made by said company to said Simon was and is now stated to be in full payment of all the royalty and lease rental due or to become due on the one hundred and ten acres (110) of land described in the aforesaid lease until such time, at the option of the lessee, grantee herein, other wells are drilled and the product taken therefrom, when

the terms of said lease as to royalty on oil or gas shall apply to such additional well or wells on said 80 acres.''

It is admitted that the amount that has been paid for royalties on the thirty acres amounted to this $1,250.00. That leaves the situation of the parties at that time as follows: The thirty acres is conveyed in full title to The Northwestern Ohio Natural Gas company. Part of the fifty acres is conveyed and there is reserved to the company all rights acquired by the terms of the lease I have referred to in the west half of the northwest quarter of section twenty-nine, then the 80 acres. So that the lease from that time on simply applies to the eighty acres and nothing more. So that the gas company held the eighty acres by the lease, to work upon under the lease, and the rest it held in full title to use as it saw fit.

The $1,250 it was said was paid by the Palmer Oil and Gas company; but the testimony seems to show, though it is not material, that it was paid by the gas company.

Under that condition of affairs the gas company have recently and for quite a while undertaken to sink a well on that eighty acres, and when they attempted to do so, the plaintiff in his petition in this case filed June 8, 1895, undertakes to prevent the defendant from doing so by an injunction and the case came on for trial and was tried in the court of common pleas and was brought to this court on appeal, and testimony has been heard upon it in this court.

There was a question raised upon the pleadings that should be first disposed of. The plaintiff having averred that this clause in the deed that I have read, which I will call an agreement was not in it at the time it was executed and that he did not know anything about it.

Testimony was offered to show that at the time the deed was made and delivered, that clause was not in the deed, but we think, upon examination of the deed and also from the testimony heard, that the contention of the plaintiff in that respect is not correct.

We think that agreement as it exists and stands here at the present time was in fact written in and in the deed at the time it was signed and delivered by Levi Simon to The Northwestern Ohio Natural Gas company. Whether Levi Simon fully understood all that was in it and especially whether he understood the effect of it may be a question, but that it was there and was read to him and his wife, we have no doubt whatever, and we shall proceed to decide this case upon the theory that it was there in the deed and was read to the parties and was assented by both parties.

The rights of these parties must depend upon a proper construction of this deed and that too, in regard to the eighty acres of land.

I will read again: ''It is understood and agreed by the parties hereto that this conveyance shall not in any manner annul or affect the rights of the grantee herein acquired by the terms of the lease made by the grantors herein for the west half of the northwest quarter of section twenty-nine under date of September 13, 1886, and duly recorded, etc. The lease was in fact, for more than that amount of land, but they simply recited it was for that particular eighty acres. Then it provides: ''That the payment of $1,250, heretofore made by said company to said Simon was and is now stated to be in full payment of all royalty and lease rental due, or to become due on the 110 acres of land described in the aforesaid lease, until such time at the option of the said lessee, grantee herein, other well or wells are drilled.''

There was one well on the land at the time, and that was the well that had been sold by Simon to the defendant, and that was in full of that royalty. If any other well was sunk, after that time, the right to the royalty would follow. Of course the well having been sold to the Gas company by Simon no royalty could accrue to·him because he had ceased to be the owner of it.

Now we come to this lease, and what are the rights of the parties under it. It was to be in full payment of all royalty and lease rental due or to become due on the one hundred and ten acres of land until such time, at the option of said lessee, grantee herein, other well or wells are drilled and the product taken therefrom.

Now it is claimed, as we understand, on the part of the Gas company that by virtue of this phrase "until such time at the option of said lessee, grantee herein, other well or wells are drilled," that they have the right to drill their wells at any time that may suit their convenience or judgment, or, if that contention be not true, they have the right to drill wells upon that eighty acres so long as gas or oil is found in the wells that are sunk upon the thirty acres, or that the lease is a total lease and that the whole provision of it must apply to the eighty acres and that there could be no forfeiture of the eighty acres only upon such terms as would work a forfeiture of the thirty acres.

We think that a fair construction of this instrument will be substantially this: That the Gas company reserves to itself in the deed the right to work these eighty acres or wells upon it, upon the conditions of the original lease; that is to say, that they shall proceed to sink wells upon that eighty acres and to operate them within the terms of the original lease or within the time stipulated in the original lease, within the five years.

These parties have by their own action separated these lands and any claim that can be made that the one hundred and ten acres was granted by the original lease is destroyed by the fact that the parties have separated the lands.

The full title has been taken to the thirty acres by the Gas company and it leaves the eighty acres alone to be worked by the lessee, and when it says that the wells are to be sunk by the said lessee, the rights of that said lessee must be limited to the commencement of the lease and the work must be commenced within the five years from the date of the original lease dated in April, 1886, as otherwise it would seem to us that this deed would be indeterminate and indefinite and void for want of certainty.

·We think that construction is in accordance with the principles of equity that should govern between these parties and that the lessor, Levi Simon, had a right to claim that the Gas company should proceed to develop these lands within the life of the lease, that he might have the use and enjoyment of the royalties and that it was not his intention or the fair intention of the parties at that time, that the right of the Gas company to sink wells should be indefinite and indeterminate.

Under our view of the case, upon that construction of the lease, after the expiration of five years the Gas company would have no right to sink wells upon that eighty acres and therefore the injunction that is prayed in this case should be granted to prevent their doing so, the five years having already expired.

*Geo. H. Phelps*, Attorney for Plaintiff.

*Troup & Dunn*, Attorneys for Defendant.